```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
  SCHENKER OF CANADA LTD., and              :
  SCHENKER, INC.,                           :
                                            :   MEMORANDUM DECISION
                      Plaintiffs,           :   AND ORDER
                                            :
              - against -                   :   24-cv-6440 (BMC)
                                            :
  AM TRANS EXPEDITE LLC d/b/a FUSION        :
  TRANSPORT LLC,                            :
                                            :
                      Defendant.            :
----------------------------------------------------------------X
```

**COGAN**, District Judge.

Plaintiff Schenker originally brought this action in state court, seeking to recover damages for goods lost in transit. It alleges that it was a broker or freight forwarder of laptop computers, arranging transport from Shanghai to Pennsylvania; that it hired defendant Fusion to provide ground transportation from Los Angeles to Pennsylvania; and that a portion of the goods were lost or stolen, for which Fusion is responsible. Fusion removed the case to this Court because Schenker's state court complaint included a claim under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, as well as six other common law causes of action.

Fusion has moved to dismiss the complaint on the ground that the Carmack Amendment claim preempts all of the common law claims, and that plaintiff has failed to state a claim under the Carmack Amendment. Fusion is correct as to preemption. It is well-established that the Carmack Amendment preempts state law claims arising out of the shipment of goods, and Schenker's argument that the parties waived Carmack Amendment preemption in their carriage agreement is unsupported and, indeed, contradicted by the language of the agreement.

However, I reject Fusion's argument that Schenker has failed to state a claim under the Carmack Amendment. Schenker has alleged enough to meet the plausibility standard under Rule 12(b)(6).

Fusion's motion to dismiss is therefore granted in part and denied in part.

## BACKGROUND

The background of the case as set forth below is derived from the allegations in the complaint, which are taken as true for purposes of this motion, documents subject to judicial notice, and the contractual agreements between the parties which are necessarily incorporated in the complaint. See Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 60 (2d Cir. 2016); Bristol v. Nassau Cnty., No. 08-cv-3480, 2016 WL 2760339 (E.D.N.Y. May 12, 2016).

Schenker is a "transportation and logistics company" that is licensed by the U.S. Department of Transportation as an interstate broker for transportation and as a licensed motor carrier. Non-party Apple, Inc. hired Schenker to transport 5,160 Apple MacBook Air laptop computers from Shanghai, China to Carlisle, Pennsylvania. Schenker retained Fusion to handle the domestic leg of the shipment, *i.e.*, from Los Angeles to Carlisle. The operative carriage agreement prohibited Fusion from using any other company or sub-contracting transportation to any other motor carrier without Schenker's written permission.

Nevertheless, Fusion subcontracted the carriage agreement without permission in two ways. First, it arranged for the goods to be picked up on the dock by a company called Atlas Marine and brought to a warehouse in Los Angeles. Second, Fusion subcontracted with another third-party company, Sandhu Trucking, to transport the goods from the warehouse to Carlisle. Schenker never gave permission for these subcontracts and, indeed, it had expressly forbidden Fusion from brokering the subject shipment.

Ultimately, the goods made it to Carlisle, but about a month after delivery, Schenker found that a portion of the goods had been pilfered. Upon discovering the loss and the unauthorized subcontracting, Schenker notified Fusion that the Sandhu driver did not satisfy the required background, security and screening standards; had made unauthorized stops; and had failed, though required, to use GPS tracking. Schenker also found that Sandhu had a history of other similar thefts.

Schenker had to issue a credit note to Apple, Inc. for $1,290,318.90, the amount of damages it seeks to recover from Fusion in this action. The complaint contains seven claims for relief: (i) breach of contract; (ii) negligence; (iii) breach of bailment; (iv) breach of contract for failure to procure insurance; (v) a Carmack Amendment claim; (vi) breach of contract – third party beneficiary; and (vii) attorneys' fees.

After reviewing Fusion's premotion conference letter, seeking leave to file a motion to dismiss, and Schenker's response, Judge Choudhury, to whom this case was previously assigned, set a briefing schedule for the motion. The schedule provided that within three weeks after Fusion filed its motion to dismiss, Schenker could file an amended complaint, but that if it did not, "[t]here shall be no further opportunity to amend." Schenker did not file an amended complaint in response to Fusion's motion.

## DISCUSSION

### I.  Preemption

A motion to dismiss by reason of preemption is properly brought under Rule 12(b)(6). See Aviva Trucking Special Lines v. Ashe, 400 F. Supp. 3d 76 (S.D.N.Y. 2019) (applying Rule 12(b)(6) to preemption claim); cf. Jiras v. Pension Plan of Make-Up Artist & Hairstylists Local 798, 170 F.3d 162, 165 (2d Cir. 1999) (Rule 12(b)(6) applies to ERISA preemption).

>The Carmack Amendment provides that:
>
>A carrier providing transportation . . . shall issue a receipt or bill of lading for property it receives for transportation under this part.  That carrier and any other carrier that delivers the property and is providing transportation . . . are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States. . . .  Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

49 U.S.C. § 14706(a)(1).  Schenker does not dispute that when the Carmack Amendment applies, it preempts state law claims.  Nor could it.  The Second Circuit has clearly decided that field preemption applies when a shipment falls under the Carmack Amendment.  See Cleveland v. Beltman N. Am. Co., 30 F.3d 373, 381 (2d Cir. 1994); N. Am. Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 233-34 (2d Cir. 1978).  Instead, Schenker raises two arguments as to why the Carmack Amendment does not cover this shipment.

**A.  Waiver**

First, Schenker argues that the parties' contract waives the Carmack Amendment.  It is certainly true that parties can contract around the Carmack Amendment.  The statute expressly states that the parties may "in writing, expressly waive any or all rights and remedies under [the Carmack Amendment] for the transportation covered by the contract," 49 U.S.C. § 14101(b)(1), and many cases have recognized such waivers in shipping contracts.  See, e.g. Aviva, 400 F. Supp. 3d at 79-80.

However, Schenker misconstrues a choice of law/choice of forum clause in the contract as an express waiver of the Carmack Amendment.  The clause on which it relies here simply states:

>The validity, enforceability, performance, and construction of the terms, conditions, and provisions of this Contract shall be governed by the laws of the state of New York to the extent not inconsistent with applicable federal laws.  The

4

parties hereby consent to, and submit to the jurisdiction of the federal and state courts located in the State of New York, and any action or suit under this Contract shall be brought by the parties in any federal or state court with appropriate jurisdiction over the subject matter established or sitting in the State of New York. The parties shall not raise in connection therewith, and hereby waive, any defenses based upon the venue, the inconvenience of the forum, the lack of personal jurisdiction, and sufficiency of service of process, or the like in any such action of suit.

That's a long way from an "express waiver" of the Carmack Amendment that the statute requires, leagues beyond even the most expansive reading of actual waiver clauses in the cases upon which Schenker relies, e.g., Aviva, 400 F. Supp. 3d at 80 ("the parties expressly waive all rights and obligations allowed by 49 U.S.C. 14101 to the extent they conflict with the terms of this contract" (cleaned up)).  Schenker cites no case holding that a choice of law or choice of law clause – without ever mentioning the Carmack Amendment, the Interstate Commerce Act, or the word "waiver" – constitutes a waiver of the preemptive effect of the Carmack Amendment.

This would be a particularly poor case to apply such an expansive reading to a choice of law or choice of forum clause.  That is because this contract expressly references and incorporates the Carmack Amendment:

> SCHENKER shall have the right to seek recovery from CARRIER for any and all loss and/or damage to cargo tendered for transportation hereunder. The provisions of Section 14706 of Title 49 of the United States Code, as the same may be amended or renumbered from time to time, shall be a part of this Contract and shall govern all shipments transported and services rendered hereunder.

I need not consider whether Schenker's waiver argument should be considered under New York law, pursuant to the New York choice of law clause in the contract, or federal law, since the subject of its argument is waiver of a federal statute.  Under either framework, Schenker has pled nothing that would constitute a waiver.  See Aviva, 400 F. Supp. 3d at 79; Massey v. On-Site Manager, Inc., No. 11-cv-2612, 2011 WL 4356380, at *3 (E.D.N.Y. Sept. 16, 2011) (applying New York law).  An express waiver in writing that is required under the

5

Carmack Amendment is the opposite of the express incorporation of the Carmack Amendment that is at issue here.

### B. Whether Fusion was a Broker

Schenker's next tactic is to argue that perhaps Fusion was acting as a "transportation broker" in this transaction, not a carrier, in which case the Carmack Amendment would not apply, see 49 U.S.C. § 13102(2), Schenker, Inc. v. Arnoff Moving & Storage, Inc., No. 17-cv-296, 2018 WL 2075290, at *5 n.11 (E.D.N.Y. Feb. 21, 2018), report and recommendation adopted, 2018 WL 1377304 (E.D.N.Y. March 19, 2018) (collecting cases), and so there would be no preemption. At the very least, Schenker argues, there is an issue of fact as to Fusion's role. It appears that Schenker came up with the argument because Fusion, like Schenker, is licensed by the FMCSA as both an interstate motor carrier and a transportation broker, and that, in its motion, Fusion reserved the right, if the case went forward, to dispute Schenker's allegation that it acted as a motor carrier.

Schenker's argument is ironic coming from a party that has specifically pleaded a claim under the Carmack Amendment; that has expressly alleged that Fusion was acting as a motor carrier; that has nowhere alleged, even in the alternative, that Fusion was acting as a transportation broker; that has deliberately failed to meet a scheduling deadline to amend the complaint to make such an alternative allegation even though it was made aware of the issue; that did not voluntarily withdraw the Carmack Amendment claim and seek to remand to state court based on the fact that the claim was the only basis for removal; and that has vigorously defended its Carmack Amendment claim against Fusion's argument, addressed below, that the claim is legally deficient. Indeed, the entire gist of Schenker's complaint is that Fusion, as a motor carrier, improperly subcontracted its obligation to other carriers.

Moreover, Schenker has pointed to no reason why the legal theory in its complaint might also admit to an alternative. The contract documents certainly don't support "transportation broker" status for Fusion. The contract, incorporated into the Bill of Lading, is entitled "Contract for Motor Transportation Services." Consistent with this, the Recitals state:

> WHEREAS, SCHENKER is in the business of providing logistics, motor carrier transportation, and property broker services to its customers pursuant to Federal Motor Carrier Safety Administration operating authority, MC155417, U.S. DOT No. 1817188;
>
> WHEREAS, CARRIER is engaged in the business of transporting property by motor vehicle as a contract carrier in interstate, intrastate, and/or foreign commerce, and providing related transportation and logistics services as specified by SCHENKER for compensation, and desires to furnish to SCHENKER such services, as hereinafter more fully described, and;
>
> WHEREAS, SCHENKER desires to obtain such services from CARRIER.

There is no reference to Fusion acting as a transportation broker.

Notwithstanding what seems to be a dispositive description of the services that Fusion was to provide, Schenker had every opportunity to plead an alternative status to preserve its common law claims. Having failed to do so, it is hoisted by its own petard.

## II.     Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

7

(internal quotation marks, quotation, and citation omitted). Said otherwise, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations and footnote omitted).

In conducting the above analysis, the Court must accept as true all the well-pled allegations contained in the complaint. Iqbal, 556 U.S. at 678. But this tenet "is inapplicable to legal conclusions." Id. "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Fusion's argument turns on one point: because Schenker took nearly a month to have anyone inspect the goods, Schenker does not know, and cannot plausibly allege, that the pilferage occurred during transit, for which Fusion might be liable, or after the goods were placed with Schenker's agent in Carlisle, where they stayed for a month before the theft was discovered, in which case Fusion would have no liability. We need to look at the complaint and see if it plausibly alleges that the pilferage occurred in transit.

On the face of the complaint, the main allegation suggesting that the pilferage occurred in transit is: "At the time the cargo was delivered to [Schenker's] consignee, the theft of portions of various pallets was concealed and unobservable." That's a rather conclusory allegation. Most importantly, it does not suggest that anything occurred between delivery and inspection a month later that created the conditions of concealment or unobservability.

In other words, if Schenker was able to discover the pilferage a month after the delivery, despite the concealment and unobservability, it could have discovered it immediately upon or promptly after delivery. The complaint gives no indication to the contrary. The timing, which

8

again appears on the face of the complaint, therefore renders the concealment and unobservability allegation irrelevant in determining the plausibility of the Carmack Amendment claim. There is simply a gap in Schenker's factual theory of the case which "concealment" and "unobservability" does not address. We are, instead, left with two scenarios: the pilferage occurred during transit, or the pilferage occurred after delivery.

Nevertheless, there are two other allegations in the complaint that, in my view, sufficiently push the claim over the line from conceivable to plausible, albeit barely. First, the complaint alleges that "the overall time taken during the various stops along the route amounted to approximately 21 hours and 9 minutes of stop time, which afforded the drivers ample time to break down pallets, pilfer those items from selected pallets and reconstruct the pallets as though there was no manipulation visible." Similarly, the complaint alleges:

> The unauthorized subcontractor's drivers had ample opportunity to pilfer the high value cargo by making extensive unauthorized stops (without any security and GPS alerts) in the course of transit from California to Pennsylvania during which time they systematically cut open and re-secured with staples underneath a select number of pallets of the cargo with yellow bands over the top of the pallets, thereby concealing the pilferage of the high value cargo from different sections of the pallets.

It's not much. Fusion correctly points out that without actual knowledge that this is what happened, it requires some speculation. But this is a pleading motion, and Schenker's theory of liability, based on opportunity, motive, and, of course, the fact that a crime was committed, does create a plausible explanation of how the goods were pilfered during transit. Whether Schenker can prove that's what happened, or, if it wants to, whether Fusion can prove that the pilferage happened after delivery, will have to await further proceedings in the case.

It does not matter that Fusion's alternative theory of post-delivery damage may also be plausible. As the Second Circuit has noted, "The choice between two plausible inferences that

9

may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).  Facts "may well be subject to diverging interpretations, each of which is plausible. . . . [However,] [t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quotation and citation omitted).

## CONCLUSION

Fusion's motion to dismiss is granted in part and denied in part.  The state law claims are dismissed.  The motion is denied as to the claim under the Carmack Amendment.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
September 4, 2025

10